```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        JACKSONVILLE DIVISION
```

ANN COPPEDGE,

       Plaintiff,

vs.                                        Case No. 3:08-cv-293-J-HTS[1]

MICHAEL ASTRUE,
Commissioner of
Social Security,

       Defendant.
_____

## OPINION AND ORDER[2]

### I. Status

Ann Elarbee Coppedge is appealing the Social Security Administration's denial of her claim for Disability Insurance Benefits. Her alleged inability to work is related to a liver transplant, pain, headaches, fatigue, and a weakened immune system. *See* Transcript of Administrative Proceedings (Tr.) at 183-84. Ms. Coppedge was ultimately found not disabled by Administrative Law Judge (ALJ) William H. Greer. *Id.* at 16, 23. Claimant has exhausted the available administrative remedies and the case is properly before the Court.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference-Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

[2] Pursuant to § 205(a)(5) of the E-Government Act of 2002, this Order is available electronically. It is not otherwise intended for publication or to serve as precedent.

On appeal, Plaintiff argues the ALJ "erred in evaluating the medical opinion evidence from [her] treating physician, Dr. [Jeffrey S.] Hoffman." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #10; Memorandum) at 1, 11 (emphasis omitted). Additionally, she claims the judge improperly "determined [her] ability to work was not affected by any mental limitations." *Id*. at 1, 18 (emphasis omitted).

## **II. Legal Standard**

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

#### A. Treating Physician

Ms. Coppedge takes issue with the judge "completely disregard[ing] significant portions of . . . evidence" from Dr. Hoffman bearing upon her physical residual functional capacity (RFC). Memorandum at 13.

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (per curiam) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786

F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41. ALJs, however, may not simply substitute their own judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

"Specifically," Claimant alleges, "the ALJ ignored Dr. Hoffman's opinions that [she] could only work part time, up to 20 hours per week; required a job that would allow her to raise her legs at times to alleviate abdominal pain or even lie down to get comfortable;" and "would need breaks from work to rest for fatigue or to relieve her pain." Memorandum at 13 (internal quotation marks and other punctuation omitted).

A conclusion as to whether an individual is disabled or has the ability to perform full-time work is essentially legal rather than medical. It "is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392

F.3d 988, 994 (8th Cir. 2005); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (Determinations about disability or ability to work "are legal conclusions[,]" not medical opinions.); *Zulinski v. Astrue*, 538 F. Supp. 2d 740, 751-52 (D. Del. 2008) (doctor's statement as to inability "to sustain full time, everyday work on a regular basis" disregardable as not medical opinion (internal quotation marks omitted)). As "a physician is not qualified to make" judgments as to disability or ability to work as defined by law, *Norfleet v. Sullivan*, CIV. A. No. 89-5978, 1990 WL 29675, at *4 (E.D. Pa. Mar. 14, 1990); *see also Townsend v. Apfel*, 47 F. Supp. 2d 958, 964 (N.D. Ill. 1999), an ALJ would be unjustified in according significance to legal determinations offered by doctors. Thus, to the extent Plaintiff suggests otherwise, the argument is rejected.

Opinions concerning a need to lie down, elevate one's legs, or take breaks, however, are at least potentially significant. Dr. Hoffman explained in a letter dated April 3, 2007, that Plaintiff's "complaints . . . *likely* do impart some significant impairment" and she should have a job that would allow her "to raise her legs *at times* . . . or even lie down[.]" Tr. at 464 (emphasis added). Further, he stated "[s]he *might* likewise need breaks from work to rest[.]" *Id.* (emphasis added). The uncertainty of the opinions, as well as their failure to indicate either the frequency or duration of the listed accommodations (e.g., how often Claimant

would need to raise her legs or for what length of time she would have to rest), undermines the assertion they should have been incorporated into an RFC finding.[4] Arguments concerning the judge's alleged[5] rejection of the identified opinions are thus unavailing.

**B.  Examining Physician**

Plaintiff also contends "the ALJ's decision to provide substantial or controlling weight to" the evidence from Dr. Frederic F. Porcase, Jr., "cannot be affirmed[.]" Memorandum at 14. Ms. Coppedge maintains Dr. Porcase's opinions should not have been relied upon since he examined her only once, in 2005; specializes in family medicine; and "did not review any medical evidence[.]" *Id.* at 14.

Several factors govern the analysis of information from nontreating[6] sources. Initially, it is noted examining doctors' opinions are not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam); *see also Crawford v.*

---

[4]   An argument might be made that Dr. Hoffman should have been contacted for additional information to develop the record, *cf. Coleman v. Astrue*, 498 F.3d 767, 774 (8th Cir. 2007), but Plaintiff has not raised such an issue.

[5]   It is observed the judge attempted to account, at least in part, for restrictions similar in nature to those imprecisely identified by Dr. Hoffman. He determined Plaintiff could only sit "for continuous periods of up to 15 minutes with 1-2 minutes to loosen up and must be allowed to recline[.]" *Id.* at 18; *cf. id.* at 87.

[6]   "Nontreating source means a physician, psychologist, or other acceptable medical source who has [performed an] examin[ation] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (emphasis omitted).

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam). However, the ALJ is required to consider every medical opinion that is in evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Unless a treating source is given controlling weight, an opinion should be evaluated by examining such factors as: (1) length and frequency of treatment (if any), (2) nature and extent of the relationship, (3) supportability, (4) consistency, and (5) specialization. *See id.* §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). Furthermore, the ALJ "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation marks omitted); *Gabriel v. Astrue*, No. 3:07-cv-1076-J-33MCR, 2009 WL 88380, at *6 (M.D. Fla. Jan. 12, 2009) (quoting *Vincent*).

The ALJ did not explicitly reject the examiner's opinions--it is his utilization of them to which Plaintiff objects. Still, he did not rely on Dr. Porcase to the extent portrayed in the Memorandum. In regard to Plaintiff's complaints of abdominal pain due to an overly large transplanted liver, the judge indeed noted the physician's inability "to confirm that [her new] liver extended outside the limits of [her] normal liver." Tr. at 22. Nevertheless, the judge ultimately gave "the claimant the benefit

of the doubt" and recognized limitations allegedly caused by the size of her liver. *Id.*[7]

Plaintiff also complains the ALJ erred by relying, in part, "upon the fact that Dr. Porcase noted [she] had excellent muscle strength" to determine the extent of her fatigue. Memorandum at 15 (internal quotation marks omitted). The error perceived here is not so much an improper reliance upon the examining source as the misuse of his limited findings. "This is a clear example[,]" urges Claimant, "of the ALJ playing doctor, as he fails to offer any authority for his medical opinion that no evidence of a loss of muscle tone or strength contradicts Dr. Hoffman's opinions regarding her limitations as a result of fatigue." *Id.* (internal quotation marks omitted). The Court need not approve of the judge's reasoning in the abstract, however, if its negative impact has not been identified. *Cf. Ford v. Astrue*, No. 3:07-CV-61 (CDL), 2008 WL 3864610, at *3 (M.D. Ga. Aug. 13, 2008). As already determined, Plaintiff has failed to demonstrate that the equivocal, unquantified opinions from Dr. Hoffman needed to be adopted by the ALJ. Moreover, she neglects to point out any evidence, apart perhaps from subjective reports, suggesting functional limitations beyond those acknowledged by the judge in his RFC finding.

---

[7] That Ms. Coppedge did receive a liver that was for her larger than ideal is supported by the record. *See, e.g., id.* at 464, 498.

### C. Mental Limitations

Plaintiff argues the judge did not sufficiently account for her mental limitations. She claims the ALJ "failed to properly address the evidence from Drs. Hoffman and [Eugene J.] Rankin regarding [her] mental functioning." Memorandum at 18.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairment(s) . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *See id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.*

§§ 404.1546(c), 416.946(c). According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

The ALJ determined

> [i]n regard to any mental limitations . . . if any exist they are not severe. The claimant has not alleged any significant mental disorder. When seen by the consultative psychologist in 2005 she gave a history of a panic disorder but indicated that it was under control with medication. The record does not substantiate that the claimant has a history of . . . any . . . significant mental impairment. The consultative psychologist determined that the claimant had a GAF score of 65 which equates to mild mental limitations and the state agency psychological consultant agreed. As there is no evidence to the contrary the undersigned [finds] that she has mild limitations in activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace, with no episodes of decompensation[.]

Tr. at 22-23. Additionally, the judge suggested Dr. Hoffman's conclusions, offered in a 2007 letter, are inconsistent with a letter he wrote in 2005. *See id.* at 22.

In 2005, the physician had explained that, although he had not specifically "talked with Ms. Coppedge about any issues relating to disability[, p]ost transplant, she has done quite well. Her main symptomatic complaint has been headaches." *Id.* at 280. Dr. Hoffman did "not know of any specific physical disability that would relate to her transplant." *Id.* He then added, "[f]or information about her headaches and their relationship to her functional capacity, [he] would suggest that her primary care

physician or a neurologist be contacted." *Id.* at 281. In the 2007 writing, which ostensibly merely clarified his letter from more than two years before, *see id.* at 463-64, Dr. Hoffman described several symptoms and concluded (in addition to his remarks about physical capacity) "[t]he combination of [Plaintiff's] symptoms would best be suited to a low stress work environment[.] Listed amongst Ms. Coppedge's medical conditions is panic disorder which likewise would require a low stress and flexible schedule." *Id.* at 464. Inasmuch as the 2007 letter seems to be substantially more than a clarification of the initial opinion, the ALJ was justified in alluding to the inconsistency. Moreover, the first symptom mentioned in the new document is headaches, *see id.* at 463, the only problem noted in the previous letter and which Dr. Hoffman had seemingly felt unqualified to comment on in relation to their functional effects. As the judge correctly observed, in a treatment note from October 2005, Dr. Hoffman "noted that the claimant's headaches occur 4-5 times per year[.]" *Id.* at 20; *see also id.* at 488. The ALJ concluded "headaches that occur, on average, once every two months, even if severe, would [not] prevent an individual from engaging in substantial gainful activity[,]" *id.* at 21, and Plaintiff does not attack this determination. Thus, the judge's analysis of the sole condition referenced by Dr. Hoffman in both letters stands unrefuted. Whereas it would have been preferable for the ALJ to explicitly mention the asserted need for

low stress work, the Court will not remand this case for engagement in such an exercise.

Dr. Rankin, who served as an examining psychologist, provided a report dating from March 2005. *See id.* at 284-88. While the document's narrative of "evaluation results" does not reveal evidence thereof, *id.* at 286 (capitalization and emphasis omitted), Ms. Coppedge apparently relayed a history of "fatigue and weakness," *id.* at 285, during her "brief interview" with the psychologist. *Id.* at 286. In Dr. Rankin's view, "Ms. Coppedge appears to be experiencing no significant problems . . . [i]n terms of social functioning[.] Her ability to concentrate, persist and keep pace appears unaffected by her emotional state." Finally, although undue fatigue will be experienced, "she appears able to tolerate the routine mental demands associated with work[.]" *Id.* at 287. Yet, the doctor also stated that, due to her fatigue, "[i]n order to maintain attention and pace, she will require a simplified and structured schedule." *Id.*

Plaintiff complains the judge "relied upon the Global Assessment of Functioning [(GAF)] score of 65 provided by [Dr. Rankin] to support his finding that [she] experienced mild mental limitations that need not be included in his RFC determination[.]" Memorandum at 20 (internal quotation marks and citation to record omitted). However, the ALJ's implicit rejection of the one-time examiner's insinuation Claimant manifests deficits of attention and

pace in the absence of "a simplified and structured schedule[,]" Tr. at 287, was not erroneous.  Dr. Rankin assigned Ms. Coppedge a score of 65 on the GAF scale, "which qualifies as mild symptoms." *Hoffman v. Astrue*, 259 F. App'x 213, 218 (11th Cir. 2007) (per curiam) (finding the score to be inconsistent with an inability to work); *see also Stephens v. Astrue*, No. CV 07-2191-PJW, 2008 WL 4381615, at *1-2 (C.D. Cal. Sept. 23, 2008) (GAF score of 65-70 suggested condition "would not interfere with [the] ability to work").

As with the statement of Dr. Hoffman discussed above, the ALJ could have been more expository in his rejection of specific aspects of Dr. Rankin's report.[8]  Still, Claimant points to no other evidence to support the existence of her alleged mental limitations, and the circumstances do not warrant reversal.  The Commissioner's decision will be affirmed.

## IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of February, 2009.

/s/         Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

---

[8] To the extent Dr. Rankin attributed the mental impairment to fatigue, *see* Tr. at 287, however, it is observed the ALJ explicitly rejected the idea "claimant's alleged fatigue [was] a significant problem[.]"  *Id.* at 22.

Copies to:

Counsel of record
 and pro se parties, if any